MAYER BROWN LLP
ELSPETH V. HANSEN (SBN 292193)
Two Palo Alto Square #300
3000 El Camino Real
Palo Alto, CA 94306
Telephone: (650) 331-2043
Facsimile: (650) 331-2060
*ehansen@mayerbrown.com*

MAYER BROWN LLP
HANS J. GERMANN (Pro Hac Vice To Be Filed)
71 S Wacker Drive
Chicago, IL 60606
Telephone: (312) 701-8792
Facsimile: (312) 706-8169
*hgermann@mayerbrown.com*

RAYMOND P. BOLAÑOS (SBN 142069)
AT&T Services, Inc. Legal Dept.
430 Bush Street, 6th Floor
San Francisco, CA 94108
Phone: (415) 268-9491
Fax: (415) 543-0418
*rb2659@att.com*

Attorneys for Plaintiff
New Cingular Wireless PCS, LLC d/b/a AT&T Mobility

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NEW CINGULAR WIRELESS PCS, LLC, D/B/A AT&T MOBILITY, a Delaware limited liability company,<br><br>Plaintiff,<br><br>v.<br><br>CITY OF OAKLAND, a California municipal corporation,<br><br>Defendant. | Case No. 20-CV-2382<br><br>**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**<br><br>**AND**<br><br>**REQUEST FOR EXPEDITED REVIEW PURSUANT TO 47 U.S.C. § 332(c)(7)(B)(v)** |

Plaintiff New Cingular Wireless PCS, LLC, d/b/a AT&T Mobility ("AT&T"), a limited liability company organized and existing under the laws of Delaware, complains against Defendant City of Oakland, California (the "City") and alleges as follows:

**INTRODUCTION**

1. AT&T has been trying since 2017 to place "small cell" wireless facilities (*i.e.*, small antennas and related equipment) on poles in the City's rights-of-way, including 44 streetlight poles owned by the City, to provide and improve wireless services in the City. Federal law limits the ability of municipalities to block installation of such facilities, based on nationwide goals of promoting the widespread availability of advanced, reliable wireless services. The City has violated this federal law, and hence AT&T seeks declaratory and injunctive relief.

**JURISDICTION AND VENUE**

2. This action arises under the laws of the United States, including the Communications Act of 1934, as amended by the Telecommunications Act of 1996, 47 U.S.C. §§ 253 and 332. This Court has jurisdiction over these claims pursuant to 28 U.S.C. §§ 1331 (federal question) and 1337 (commerce). The Court's authority to grant declaratory relief and related injunctive relief is based upon 28 U.S.C. §§ 2201-2202 because an actual controversy exists.

3. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because AT&T's claims stated herein arose in this judicial district.

**INTRADISTRICT ASSIGNMENT**

4. Assignment to the San Francisco Division or Oakland Division of this Court is appropriate pursuant to Local Rule 3-2(c) in that the events that give rise to the claims asserted herein occurred in the County of Alameda.

**PARTIES**

5. Plaintiff AT&T is a limited liability company duly organized, existing, and operating under the laws of Delaware, with its principal place of business in Atlanta, Georgia, with offices at locations throughout California. At all times relevant herein, AT&T has been and is qualified to do business in California.

6. Defendant City of Oakland is a California municipal corporation organized and existing under the laws of the State of California.

**LEGAL AND FACTUAL BACKGROUND**

7. Under the federal Communications Act of 1934 as amended by the Telecommunications Act of 1996 (the "Act"), municipalities must act upon applications to place wireless facilities within a "reasonable period of time" (47 U.S.C. § 332(c)(7)(B)(ii)); local regulation may not "prohibit or have the effect of prohibiting the ability" of a carrier to provide telecommunications services (47 U.S.C. § 253(a)); and local regulation of the placement of wireless facilities "shall not prohibit or have the effect of prohibiting the provision of personal wireless services" (47 U.S.C. § 332(c)(7)(B)(i)(II)). The Federal Communications Commission ("FCC") has promulgated orders interpreting and implementing Sections 253 and 332 of the Act, which include specification of reasonable periods of time under Section 332 and identification of the type of local action, or inaction, that may unlawfully prohibit service.

8. AT&T is a wireless carrier that provides both wireless telecommunications services and personal wireless services.

9. On November 20, 2017, AT&T submitted 44 applications to place small cells on City-owned streetlight poles in the public rights-of-way. The City has yet to approve or deny any of the 44 applications.

10. Before AT&T submitted the subject permit applications, the City indicated that it would approve small cell applications under a separate site license agreement for each pole. However, in November 2017, the City reversed course and required a master license agreement ("MLA") governing the attachment of all small cells on any City-owned poles.

11. The City provided AT&T a draft MLA on December 29, 2017; AT&T attempted to negotiate the terms of the MLA with the City, but without success.

12. On September 27, 2018, the FCC released its "*Small Cell Order,*" *In the Matter of Accelerating Wireline Broadband Deployment by Removing Barriers to Infrastructure Investment,* 33 FCC Rcd. 9088. In that order, the FCC, among other things, implemented Section 332's requirement that localities act upon wireless siting applications within a "reasonable period of

time" by specifying the presumptive maximum timeframes for small cell applications. In particular, the FCC established a "shot clock" of 60 days for applications seeking to collocate small cells on existing structures (such as an existing utility pole). 47 C.F.R. § 1.6003(c)(1)(i) & (iii); *Small Cell Order*, ¶¶ 13, 105.

13. This shot clock timeframe applies "to **all authorizations** a locality may require, and to **all aspects** of and steps in the siting process, **including license or franchise agreements** to access ROW, building permits, public notices and meetings, **lease negotiations**, electric permits, road closure permits, aesthetic approvals, and other authorizations needed for deployment." *Id.* at ¶ 132 (emphases added); *see also id.* at ¶ 144 ("All of these permits are subject to Section 332's requirement to act within a reasonable period of time, and thus all are subject to the shot clocks we adopt or codify here").

14. In the *Small Cell Order* the FCC also promulgated standards for pole attachment rates and other fees that can be charged in connection with small cell applications and installations. The FCC provided safe harbor presumptive maximum application fees and attachment rates, and also concluded that excessive fees, including requiring in-kind services or other quid pro quos, constitute an unlawful effective prohibition of service.

15. Following issuance of the *Small Cell Order*, AT&T repeatedly brought the order to the City's attention and continued to attempt to negotiate with the City. Among other things, in January 2019 AT&T sent the City a revised MLA to comply with the *Small Cell Order*, resubmitted some applications (triggering the shot clock), and offered the City multiple tolling agreements to extend the shot clocks on AT&T's applications. The City took no action on AT&T's permits, however, and did not even provide a new draft MLA until September of 2019—a year after the *Small Cell Order* was released and eight months after AT&T presented its proposed MLA to the City. The City and AT&T have exchanged MLA redlines since September, but the parties have not reached agreement on the terms thereof, as set out more fully below.

16. The City also indicated that AT&T must use City-owned conduit (rather than AT&T-installed conduit), wherever the City conduit is passable, for installation of electrical and fiber lines connecting to the small cell facilities. The City advised AT&T that AT&T could not

place its own equipment pedestals in the public rights-of-way related to operation of its small cells. Pursuant to Section 7901 of the California Public Utilities Code, however, AT&T has a statewide franchise right to construct its facilities within the public rights-of-way, so long as it does not incommode the public use of the road or highway.

17. On January 15, 2020 and January 30, 2020 AT&T resubmitted 12 permit applications (including applications for encroachment permits, building permits, and traffic control permits) to place small cell facilities on City streetlight poles in the public rights-of-way. These are:[1]

| | **Streetlight Location** | **AT&T Site ID** | **Date Filed** |
|---|---|---|---|
| Site 1 | Public right-of-way near 1748 Jefferson Street | SFOK6_016 | January 15, 2020 |
| Site 2 | Public right-of-way near 468 19th Street | SFOK6_017 | January 15, 2020 |
| Site 3 | Public right-of-way near 2022 Telegraph Avenue | SFOK6_018 | January 15, 2020 |
| Site 4 | Public right-of-way near 430 15th Street | SFOK6_022 | January 15, 2020 |
| Site 5 | Public right-of-way near 2701 Telegraph Avenue | SFOK6_023 | January 15, 2020 |
| Site 6 | Public right-of-way near 400 Hawthorne Avenue | SFOK6_027 | January 15, 2020 |
| Site 7 | Public right-of-way near 2417 Harrison Street | SFOK6_028 | January 30, 2020 |
| Site 8 | Public right-of-way near 85 Webster Street | SFOK6_031 | January 30, 2020 |
| Site 9 | Public right-of-way near 550 Embarcadero West | SFOK6_033 | January 30, 2020 |
| Site 10 | Public right-of-way near 845 Market Street | SFOK6_034 | January 30, 2020 |

[1] AT&T continues to submit small cell applications to the City in batches, and it intends to continue submitting batches until all 44 of the applications it originally submitted in 2017 have been resubmitted.

| | **Streetlight Location** | **AT&T Site ID** | **Date Filed** |
|---|---|---|---|
| Site 11 | Public right-of-way near 350 Frank Ogawa Plaza | SFOK6_036 | January 30, 2020 |
| Site 12 | Public right-of-way near 360 12th Street | SFOK6_037 | January 30, 2020 |

18. The *Small Cell Order* shot clock for the January 15 applications expired on March 16, 2020, and the shot clock for the January 30 applications expired on March 30, 2020. Yet the City has taken no action on these applications.

19. With respect to the January 15 and January 30 applications, the shot clock was never tolled (whether by issuance of a valid incomplete notice or by AT&T's agreement).

20. Only after AT&T began re-submitting its small cell applications in September 2019 did the City finally re-engage in MLA negotiations and, as noted above, finally provided a new proposed MLA to AT&T. The City's proposed MLA terms remained inconsistent with the *Small Cell Order*, however, particularly with respect to the City's proposed annual fee escalator, provisions related to in-kind services and other quid pro quos, provisions regarding the timing and deadlines for acting upon permit applications, provisions for batching multiple pole applications, and provisions regarding the information the City must provide if it denies an application. The City's proposed MLA also required AT&T to give up its rights to any benefit from future changes in federal and other applicable law.

21. The City also presented AT&T with a draft "master conduit license" setting forth terms and conditions for the use of the City's conduits (since the City would not allow AT&T to place its own conduit in the rights-of-way where City-owned conduit is passable). Under the City's draft MCL, AT&T would be required to pay an unspecified license fee with an annual escalator and other fees not supported by a cost study or otherwise justified by the City. In addition, the City's draft MCL unlawfully required AT&T to provide the City with 24 strands of fiber at no cost to the City for each use of conduit associated with a small cell attachment. And, as with the MLA, the draft MCL would require AT&T to waive its rights to the benefit of future

changes of law; was inconsistent with the FCC's shot clock rules and regulations concerning batching attachment applications; and was inconsistent with the Act regarding the information the City must provide when it denies an application.

22. AT&T objected to the unlawful provisions in the MLA and MCL and promptly provided redlines to the City in October of 2019. The City acknowledged receipt of AT&T's comments, but then took another three months, to January of 2020, to provide AT&T new drafts. Those drafts, however, contained all the same unlawful provisions.

23. On January 24, 2020, one week after receiving the City's latest drafts, AT&T sent redlines back to the City, again objecting to the unlawful provisions.

24. On February 28, 2020, after more than another month passed with no response from the City, and based on expired shot clocks on 12 other, previous small cell applications, AT&T commenced action in this Court stating claims with respect to those 12 earlier applications. That earlier lawsuit is currently pending before the Court as *New Cingular Wireless v. City of Oakland*, Case No. 3:20-cv-01499.

25. On March 2, 2020, the City provided AT&T with new drafts of the MLA and MCL. The City's proposed MLA terms remained inconsistent with the *Small Cell Order*, however, particularly with respect to the City's proposed annual fee escalator and the City's Review Fee, provisions regarding the information the City must provide if it denies an application, provisions relating to batching applications, and provisions requiring AT&T to give up its rights to any benefit from future changes in federal and other applicable law.

26. The City's proposed MCL terms also remained unlawful, particularly with respect to the City unlawfully requiring AT&T to provide the City with 24 strands of fiber at no cost to the City; provisions inconsistent with the Act regarding the information the City must provide when it denies an application; provisions relating to batching applications; and provisions requiring AT&T to waive its rights to the benefit of future changes of law.

27. AT&T promptly objected to the unlawful provisions in the MLA and MCL in a letter to the City in March 2020. The City acknowledged receipt of AT&T's letter but has not responded to its contents.

28. To date, the City has not acted to approve or deny AT&T's applications, including the 12 applications that are the subject of this action.

29. As set forth below, the City's acts and inaction violate federal law.

**FIRST CLAIM FOR RELIEF**

**(Unreasonable Delay and Shot Clock Violation)**

**(47 U.S.C. § 332(c)(7)(B)(ii); 47 C.F.R. § 1.6003)**

30. AT&T hereby incorporates by reference the allegations of paragraphs 1 through 29, inclusive, as though fully set forth herein.

31. The Act required the City to act upon AT&T's applications to place wireless facilities within a "reasonable period of time." 47 U.S.C. § 332(c)(7)(B)(ii).

32. The City failed to act within a reasonable period of time upon AT&T's applications to place small cell facilities on City poles in the rights-of-way, which applications AT&T has been pursuing since 2017.

33. The City also violated 47 U.S.C. § 332(c)(7)(B)(ii), as implemented by 47 C.F.R. § 1.6003 and the FCC's *Small Cell Order*, by failing to approve or deny by March 16, 2020 the applications AT&T submitted on January 15, 2020.

34. The City also violated 47 U.S.C. § 332(c)(7)(B)(ii), as implemented by 47 C.F.R. § 1.6003 and the FCC's *Small Cell Order*, by failing to approve or deny by March 30, 2020 the applications AT&T submitted on January 30, 2020.

35. The City violated 47 U.S.C. § 332(c)(7)(B)(ii) by unreasonably delaying approval of reasonable and lawful license terms for the installation of facilities on City-owned poles and in City-owned conduit.

36. AT&T will suffer imminent irreparable harm if the City continues to delay processing AT&T's small cell applications and executing an MLA and MCL. Further, the entry of an injunction will serve the public interest by preserving the purpose of the Telecommunications Act to "encourage the rapid deployment of new telecommunications technologies." *Telecommunications Act of 1996*, 110 Stat. 56.

WHEREFORE, AT&T prays for judgment as set forth below.

**SECOND CLAIM FOR RELIEF**

**(Effective Prohibition)**

**(47 U.S.C. § 332(c)(7)(B)(i)(II))**

37. AT&T hereby incorporates by reference the allegations of paragraphs 1 through 36, inclusive, as though fully set forth herein.

38. Section 332 of the Act mandates that local regulation of the placement of wireless facilities "shall not prohibit or have the effect of prohibiting the provision of personal wireless services." 47 U.S.C. § 332(c)(7)(B)(i)(II).

39. The City has effectively prohibited AT&T's provision of personal wireless services, by failing to timely act upon AT&T's applications, by failing to approve those applications, and by failing to approve reasonable and lawful license agreement terms.

40. Local inaction by the end of the applicable small cell shot clock amounts to a presumptive prohibition on the provision of personal wireless services within the meaning of the Act. *See Small Cell Order*, ¶¶ 116-129. The FCC has explained that when a local government does not issue all necessary permits and authorizations in a timely manner, litigation will be expedited, and wireless services providers will have a straightforward path to fast and complete injunctive relief. *Id.*

41. The City's shot clock violations constitute an effective prohibition on AT&T's provision of personal wireless services, in violation of Section 332.

42. An effective prohibition, in violation of the Act, also occurs when a local requirement "'materially limits' or inhibits the ability of any competitor or potential competitor to compete in a fair and balanced legal and regulatory environment" (*Small Cell Order*, ¶ 35), such as "where a [local regulation] materially inhibits a provider's ability to engage in any of a variety of activities related to its provision of a covered service" (*id*. at ¶ 37). The material inhibition analysis "focuses on the service the provider wishes to provide, . . . including facilities deployment to provide existing services more robustly, or at a better level of quality." *Id.*, n.95. A local government "could materially inhibit service in numerous ways – not only by rendering a service provider unable to provide existing service in a new geographic area or by restricting the entry of a

new provider in providing service in a particular area, but also by materially inhibiting the introduction of new services or the improvement of existing services." *Id.*, ¶ 37.

43. The City, by initially refusing to act on AT&T's small cell applications, by later failing to act on AT&T's small cell applications, by demanding in-kind services, and by failing to execute license terms that fully comply with federal law, has materially inhibited AT&T's effort to improve its wireless network by building small cell wireless facilities in the City. The City has thus effectively prohibited AT&T from providing personal wireless services in the City.

44. The City has also effectively prohibited AT&T's provision of personal wireless services, because its failure to approve AT&T's permit applications has prevented AT&T from remedying a significant service coverage gap using the least intrusive means. AT&T's proposed small cell facilities will help AT&T address a significant service coverage gap in the City by providing and improving critical wireless services in the City, including by offloading network traffic carried by existing macro facilities in the area, and enabling faster data rates.

45. By placing the facilities in areas where AT&T's existing wireless telecommunications facilities are constrained and where AT&T experiences especially high network traffic, AT&T can close its service gaps and address its customers' existing and forecasted demands for expanded wireless services. AT&T selected the proposed facility locations as the best available and least intrusive means to address its service objectives in the relevant portions of the City.

46. AT&T will suffer imminent irreparable harm if the City continues to delay processing AT&T's small cell applications. Further, the entry of an injunction will serve the public interest by preserving the purpose of the Telecommunications Act to "encourage the rapid deployment of new telecommunications technologies." *Telecommunications Act of 1996*, 110 Stat. 56.

WHEREFORE, AT&T prays for judgment as set forth below.

**THIRD CLAIM FOR RELIEF**

**(Effective Prohibition)**

**(47 U.S.C. § 253)**

47. AT&T hereby incorporates by reference the allegations of paragraphs 1 through 46, inclusive, as though fully set forth herein.

48. Under Section 253 of the Act, local government regulation may not "prohibit or have the effect of prohibiting the ability" of a carrier to provide telecommunications service.

49. Section 253 of the Act prohibits both express and de facto moratoria on permit applications to place telecommunications facilities. *In the Matter of Accelerating Wireline Broadband Deployment by Removing Barriers to Infrastructure Investment*, 33 FCC Rcd. 7705, ¶¶ 149, 167 (FCC rel. Aug. 3, 2018) (hereinafter, "*FCC Moratoria Ruling*"). Moratoria—whether express or de facto—violate the Act and are unlawful because they prohibit or have the effect of prohibiting the provision of wireless telecommunications services. *Id.* ¶ 151. De facto moratoria are state or local actions "that effectively halt or suspend the acceptance, processing, or approval of applications or permits for telecommunications services or facilities." *Id.* ¶ 149. Examples include refusals to process applications, refusals to issue permits for a category of structures, such as a city-owned pole, and frequent and lengthy delays. *See id*.

50. The City's long, repeated delay in approving or rejecting the permit applications AT&T has pursued since 2017, its refusal to accept some permit applications, and its unreasonable delay in approving reasonable and lawful license terms for installation of facilities on City-owned poles and in City-owned conduit, constitute a de facto moratorium that violates Section 253.

51. AT&T will suffer imminent irreparable harm if the City continues to delay processing AT&T's small cell applications. Further, the entry of an injunction will serve the public interest by preserving the purpose of the Telecommunications Act to "encourage the rapid deployment of new telecommunications technologies." *Telecommunications Act of 1996*, 110 Stat. 56.

WHEREFORE, AT&T prays for judgment as set forth below.

**FOURTH CLAIM FOR RELIEF**

**(Discrimination)**

**(47 U.S.C. § 332(c)(7)(B)(i)(I), 47 U.S.C. § 253)**

52. AT&T hereby incorporates by reference the allegations of paragraphs 1 through 51, inclusive, as though fully set forth herein.

53. Section 253(c) of the Act requires state and local governments to manage the public rights-of-way on a competitively neutral and nondiscriminatory basis.

54. Section 332 of the Act prohibits a local authority from unreasonably discriminating among providers of functionally equivalent services. 47 U.S.C. § 332(c)(7)(B)(i)(I).

55. The City has discriminated against AT&T in violation of Section 253 and Section 332.

56. The City has approved ground-mounted pedestals to be installed in connection with approval of small cell applications submitted by such other providers of functionally equivalent services.

57. The City has approved ground-mounted pedestals to be installed in connection with approval of other infrastructure deployments, including telecommunications deployments.

58. By refusing to allow AT&T to place ground-mounted pedestals in connection with its small cell applications, the City has unreasonably discriminated against AT&T in violation of the Act.

59. By initially refusing to act on AT&T's small cell applications and by later failing to act on AT&T's small cell applications within a reasonable period of time, the City has unreasonably discriminated against AT&T in violation of the Act.

60. AT&T will suffer imminent irreparable harm if the City continues to refuse to allow it to install ground-mounted pedestals and to delay processing AT&T's small cell applications. Further, the entry of an injunction will serve the public interest by preserving the purpose of the Telecommunications Act to "encourage the rapid deployment of new telecommunications technologies." *Telecommunications Act of 1996*, 110 Stat. 56.

WHEREFORE, AT&T prays for judgment as set forth below.

**PRAYER FOR RELIEF**

WHEREFORE, AT&T prays for relief against the City as follows:

1. For a declaration and judgment that the City has violated the Act by failing to act within a reasonable period of time on AT&T's small cell applications;
2. For a declaration and judgment that the City has violated the Act by effectively prohibiting AT&T from improving and providing personal wireless service and telecommunications service;
3. For a declaration and judgment that the City has violated the Act by unreasonably discriminating against AT&T in failing to approve AT&T's small cell applications;
4. For an order mandating that the City grant forthwith AT&T's small cell permit applications and immediately issue all permits and all other authorizations necessary for the construction of those facilities, including but not limited to authorization for AT&T's use of the City-owned poles and conduit;
5. For an award of AT&T's costs of suit herein; and
6. For such other and further relief as the Court may deem just and proper.

**REQUEST FOR EXPEDITED REVIEW**

Section 332 of the Act provides AT&T a private right of action for the City's failure to act on AT&T's wireless facility permit applications, and states that "[t]he court shall hear and decide such action on an expedited basis." 47 U.S.C. § 332(c)(7)(B)(v). AT&T respectfully requests a hearing and decision by the Court on an expedited basis as provided by the Act.

Dated: April 8, 2020 MAYER BROWN LLP

By: /s/ Elspeth V. Hansen
Elspeth V. Hansen
Attorneys for Plaintiff
Two Palo Alto Square #300
3000 El Camino Real
Palo Alto, CA 94306